Strafford,
No. 4427.

CHARLES DIPRIZIO

*v.*

BOSTON & MAINE RAILROAD.

WILLIAM T. LEIGHTON

*v.*

SAME.

Argued December 6, 1955.

Decided December 31, 1955.

*Cooper, Hall & Cooper* and *John M. Brant* (*Mr. Burt R. Cooper* orally), for the plaintiffs.

*Burns, Calderwood & Bryant* (*Mr. Calderwood* orally), for the defendant.

LAMPRON, J. Defendant contends that the Court erred in submitting to the jury the issue of whether it provided suitable and adequate protective warning devices at Tibbetts Crossing.

The need of special protection at a given crossing depends upon the special features and facts connected with it. Among them are "the amount and character of travel, the extent of train movements over it, the operation, control and speed of the trains, the

character of the highway in its grade, width and angle of crossing, the distance and clearness of view of the track and highway each side of the crossing in relation to each other, and any other unusual or special features." *Stocker* v. *Railroad*, 83 N. H. 401, 405.

Tibbetts Road is a public highway running east and west which is intersected at approximately right angles by the single line track of defendant's Conway branch. It starts at Route 16, the White Mountain Highway, about 500 feet easterly of the crossing. It is a gravel road about 14 feet wide, has a 9.6 grade for some distance immediately east of the crossing and just west of it continues upgrade and curves sharply to the south behind a steep banking.

Tibbetts Crossing is about 4.38 miles north of the Rochester station and about .6 of a mile south of Hayes station. A geological survey of the area introduced in evidence revealed the number and location of buildings in its vicinity in 1933. A view of the scene taken before the evidence was submitted enabled the jury to visualize the approximate situation at the time of the accident. There was testimony that more than 400 cars per year travel thereon and that its traffic had doubled between 1938 and the time of the accident.

The passenger train involved in this accident was traveling across this crossing at a speed of about fifty miles per hour on a single track line on its trip from Boston to Intervale. There is also a freight train which crosses in the opposite direction at about the same time.

A train coming from the south, as this was, runs through a cut in the terrain just southerly of Tibbetts Road and the view of travelers approaching this crossing from the east, as plaintiffs were, is limited by a knoll situated south of the road and east of the track. It was testified by an engineer that from a point 83 feet east of the east rail with the eyes 6 feet above the road the rail to the south of the crossing can be seen to a distance of 95 feet; that an object about 9 feet high, such as the headlight at the center of the barrel of the locomotive, can be seen for a distance of 130 feet; and that an object 14 feet, 4 inches high, such as the top of the stack of the locomotive in question, can be seen a distance of 150 feet. From a point 50 feet east of the east rail these distances are 120, 170 and 205 feet respectively and from 40 feet they are 130, 200 and 270 feet and from 30 feet they are 140, 290 and 450 feet.

Despite certain deficiencies with respect to the frequency of use

of the crossing by highway travelers and by the railroad (*Dahar* v. *Railroad,* 95 N. H. 464, 468) we are of the opinion that, because of the physical surroundings of the crossing, the speed at which this train was operated over it, its general location and its use (which the jury could judge from its view by the appearance of the road and of the neighborhood), the issue of whether or not defendant provided suitable and adequate protective crossing devices was properly submitted to the jury. *Jones* v. *Railroad,* 83 N. H. 73, 75; *Fissette* v. *Railroad,* 98 N. H. 136, 139.

Defendant argues further that the Court's charge on this issue was erroneous because it contained the term "warning devices" which might refer to devices warning travelers that a crossing was near or devices warning travelers of the approach of a train and that because of the plaintiff's admitted knowledge of the existence of the crossing the former type of warning was not in issue. A reading of the entire charge of the Court on this question (*Peppin* v. *Railroad,* 88 N. H. 145, 153), shows clearly that the issue submitted was whether a person of average prudence running a railroad in this location under the same or similar circumstances would have provided some crossing warning other than those already provided and if it would whether the defendant's failure to do so caused or helped to cause the accident. That was the proper issue to submit and taking into account the charge as a whole there is no probability that the language used may have conveyed to the jurors an erroneous conception of what was being submitted. *West* v. *Railroad,* 81 N. H. 522, 533.

The defendant maintains also that it was error for the Court to submit to the jury the issue of whether the defendant operated its train at an excessive rate of speed which caused the accident.

The speed of the train could be found to be 50 and even 55 miles per hour. That of the truck was 10 miles per hour. There was evidence that at that speed an application of the brake on the truck would have stopped it almost instantly and that even if the brake were not applied it would have stopped within 12 feet by merely taking the foot off the accelerator. It can be seen by considering the respective views available to Leighton from various distances hereinbefore set out that the jury could find that if the speed of the train had been 25 miles per hour for instance he could have observed it in time to avoid a collision. We are of the opinion that there was enough evidence to submit to the jury whether it was causal negligence for the defendant to operate its train on this

crossing at the speed it did in view of the warning devices in existence, the topography, the use made of the highway and of the crossing, the other circumstances then existing and especially if the usual warning signals were not given as the jury could find. *Manseau* v. *Railroad*, 96 N. H. 7, 10; *Fissette* v. *Railroad, supra.*

It was not error for the Court to submit to the jury the question of a proper lookout on the part of the engineer.

There was evidence that he could have seen the truck 2½ seconds before the collision when the front of the locomotive would be 187 feet and the truck 37½ feet from the point of collision. The engineer testified that he first saw the truck when he was 75 feet or 1 second away from the point of impact. It is true "that everything being equal, the railroad at a grade crossing has the right of way over highway travelers . . . and that there is no duty imposed upon the railroad to slow down or stop its train when approaching a grade crossing until such time as it becomes apparent to the engineer that the highway traveler is not going to stop and give the train the right of way." *Gates* v. *Railroad*, 93 N. H. 179, 181. It does not follow however that it was improper to submit to the jury and for it to find that the engineer should have seen the truck 2½ seconds from the point of collision and that if he was not then blowing the whistle (as they could find on the evidence) due care required him under the circumstances to sound a warning on the whistle which would have been effective in preventing the accident. *Peppin* v. *Railroad*, 86 N. H. 395, 400. We are also of the opinion that the charge covered sufficiently defendant's requests on this subject.

It was error however for the Court to submit to the jury the issue of whether the fireman maintained a proper lookout. The only finding that could be made on the evidence was that the fireman's view toward the east was so obstructed by the boiler that he could not have seen the plaintiff at any time within which he could have taken saving action. The engineer being at his post there was no reason for the fireman to change from his usual position to obtain a view of the crossing. This matter was called specifically to the attention of the Court after the charge was given in a manner which would have permitted the Court to correct this error. See *Bourassa* v. *Railway*, 75 N. H. 359, 362. There must be a new trial therefor. *Fissette* v. *Railroad, supra*, 141.

The motions for nonsuit and directed verdict were properly denied. There was sufficient evidence of causal negligence on the

part of the defendant and there was no such difference in the evidence pertaining to the conduct of the plaintiffs as would cause us to alter the ruling made in the previous opinion on the issue of their contributory negligence. *DiPrizio* v. *Railroad*, 98 N. H. 254, 257.

Dr. Perrault, the physician who attended plaintiff Leighton, died before the first trial and a typewritten copy of the hospital record signed by him was introduced in evidence by the defendant. It recited as part of the history of the accident that he (Leighton) "was driving a truck and when train was seen, brakes would not stop truck because of skidding on slippery roads." It was proper for counsel for plaintiffs to argue that this history could be a summary from a source other than a statement made by Leighton to Dr. Perrault as inferred by counsel for defendant in argument.

Since there is to be a new trial there is no occasion to consider other exceptions which are not likely to arise therein.

*New trial.*

All concurred.